In the Matter of GOLDSTEIN, SAMUELSON, INC., a California Corporation, Bankrupt.

Robert WORTHINGTON et al., Petitioners-Appellants,

v.

Curtis B. DANNING, Trustee, Respondent-Appellee.

No. 74–1408.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 23, 1975.

Decided June 2, 1975.

---

Malcolm G. Colberg, Albuquerque, N. M., for petitioners-appellants.

Saul Cohen, Santa Fe, N. M., for respondent-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This appeal results from a bankruptcy judge's order directing Albuquerque National Bank (Albuquerque National) to deliver to the trustee in bankruptcy of Goldstein, Samuelson, Inc. (Goldstein) by delivery to the trustee's attorneys the sum of $21,038.28. That sum was deposited in Albuquerque National in the name of W.A.V.E. Corporation (W.A.V. E.). That order and the findings of fact and conclusions of law forming the order's basis were approved and adopted by the United States District Court for the District of New Mexico when the matter came before that court on a petition for review.

Goldstein sold options on commodity contracts. W.A.V.E. contacted purchasers for Goldstein in selling these options. Money received by W.A.V.E. was forwarded to Goldstein. The purchasers' checks were made out to Goldstein in about 95% of W.A.V.E.'s option sales and those checks were sent to Goldstein.

All checks, however, had to come to W.A.V.E.'s Albuquerque office for recording. Because it took several days for checks from W.A.V.E.'s Amarillo office to come by mail to Albuquerque where they would then be forwarded to Goldstein in California, another process to facilitate the transactions was developed. W.A.V.E. established bank accounts in Amarillo and Albuquerque; checks and cash resulting from sales in Amarillo and vicinity were deposited in the Amarillo account. W.A.V.E.'s staff in Amarillo would phone W.A.V.E. in Albuquerque on the day of the deposit to tell the amount of the deposit and who had made the deposit. W.A.V.E. employees in Albuquerque would write a check on the Amarillo bank for the deposit amount and deposit that check in Albuquerque National. W.A.V.E. would write another check on Albuquerque National and forward it to Goldstein. This procedure took only one day.

Appellants are persons who ordered and paid for options from W.A.V.E., apparently from the Amarillo area staff in January and February, 1973. The facilitating procedure was followed; however, W.A.V.E.'s checks to Goldstein were turned down by Albuquerque National because W.A.V.E.'s officers had failed to sign and forward signature cards for the Albuquerque National account. Mr. Ingle, a sales manager for W.A.V.E. in the Albuquerque area in early 1973, testified that by the time he learned of the turned down checks Goldstein " . . . had been shut down by the Federal Court or whoever it was." Consequently, Ingle stopped payment on the checks. Some bills of W.A.V.E., which has made an assignment of its assets for creditors' benefit, were paid from the fund. A balance of $21,038.28 remained when this action commenced. Appellants apparently never received their ordered options.

An involuntary petition in bankruptcy was filed against Goldstein in the Central District of California on March 29, 1973. Goldstein was adjudged a bankrupt on April 30, 1973. An ancillary proceeding was instituted in New Mexico in October, 1973. Ingle was examined in that proceeding.

On or about April 25, 1973, six of the eight appellants obtained a temporary restraining order from a New Mexico state district court. That order restrained W.A.V.E. from removing any funds deposited in Albuquerque National and restrained Albuquerque National from honoring any checks drawn by W.A.V.E. on the W.A.V.E. account. The bankruptcy judge, however, determined that no complaint was filed in the state court action until October, 1973. That "Amended Complaint" was filed by the eight persons who are appellants in this action.

The bankruptcy judge also determined (1) the bankruptcy court had jurisdiction over the proceedings and over the funds; (2) an order should be made directing Albuquerque National to deliver to the trustee via his attorneys the $21,038.28; (3) the moving party has no standing to object to the order's issuance; (4) there is not pending any valid order against the court binding upon it which prevents the making of the turnover order.

Appellants present only one issue on appeal, that is, the trial court erred in holding that the fund in question was the bankrupt's property because the trustee failed to meet his burden of proof. Appellants contend W.A.V.E. had possession of the fund and was acting as the buyers' broker. Appellants say this relationship of broker-buyer made W.A.V.E. constructive trustee of the fund for appellants. Their argument continues that the trustee by clear and convincing evidence, must show Goldstein had title to the fund. Appellants further argue dependent covenants in the contracts between buyers and Goldstein prevent Goldstein from having title to the fund because Goldstein has failed to perform by delivering the options.

Appellee attacks this argument by claiming that appellants are contesting a finding that was never made. Appellee

contends the bankruptcy court and the district court merely concluded the bankruptcy court had jurisdiction over the fund and the fund should be transferred to the trustee. The ultimate disposition of the fund remains to be determined.

■ We cannot accept appellants' argument that W.A.V.E. was acting as buyers' broker. The bankruptcy judge found that W.A.V.E. was acting as Goldstein's agent but did not find that W.A.V.E. acted as buyers' agent. Ingle testified that W.A.V.E. acted as an agent for Goldstein, that W.A.V.E. was compensated on a commission basis, that Goldstein had prior approval of all literature and information given out in connection with the selling program, and that in about 95% of the cases the checks were made out directly to Goldstein. The record contains several documents signed by individual appellants making agreements with or confirming orders to Goldstein.[1] We cannot say the bankruptcy judge and the trial court were clearly erroneous in determining W.A.V.E. acted as Goldstein's agent. In re Sierra Trading Corp., 482 F.2d 333 (10th Cir. 1973). This evidence also supports the view, that the bankruptcy judge and trial court evidently took, that W.A.V.E. was not an agent for both parties (bringing prospective buyers and the seller together), but rather acted only as an agent for Goldstein.

Our resolution of the agency issue simply eliminates any question that the funds were in the hands of buyers' agent. In spite of this adverse determination to appellants, we consider the thrust of appellants' argument that the appellee failed to establish, by clear and convincing evidence, that the funds were the bankrupt's property and that this failure of proof requires a reversal of the order. We agree with the appellee that no specific finding was made that the funds were the property of the bankrupt.

The Supreme Court, however, has stated that possession not title is the test of summary jurisdiction. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). Possession can be either actual or constructive. Constructive possession has been deemed sufficient to give summary jurisdiction in many situations, e. g., property held by one who makes no claim to it, property in the hands of bankrupt's bailee or agent, property held by one who makes an insubstantial and colorable claim. 2 Collier on Bankruptcy ¶ 23.05[3] (14th ed. 1975).

■ Property of the bankrupt in the hands of the bankrupt's agent when the petition in bankruptcy is filed is subject to summary jurisdiction. Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100 (1938). In Harris, bankrupt's agents had deposited monies of the bankrupt in an escrow fund in a bank. The agents claimed no adverse interest in themselves and the bankruptcy court was held to have properly determined it had summary jurisdiction over the fund (consent to jurisdiction was also involved). In our case, the funds clearly were intended for the bankrupt; they were collected by bankrupt's agent for delivery to bankrupt; the funds remained in the agent's account because of the agent's failure to have proper signature cards on file. Appellants have not contended Albuquerque National or W.A.V.E. have asserted any adverse claim to the funds. The fact that others make adverse claims to the bankrupt's property in the hands of a nonclaiming party does not dispossess the bankruptcy court of summary jurisdiction. 2 Collier, *supra*, ¶ 23.06[3]. We conclude constructive possession of the funds in the bankruptcy court was established and proof of title in the bankrupt was not necessary.

■ Likewise, proving that the title to the property was in the bankrupt was

---

1. The trial court specifically found that "[t]he parties contesting the jurisdiction of the Court had direct contact with Goldstein, Samuelson, Inc. and were well aware that they were dealing with said company."

not essential to the issuance of a turnover order. One authority has stated the matter in this way:

> It must be borne in mind that a turnover order, of itself, is not an adjudication as to rights but only as to possession, and even as to that, does not preclude a subsequent petition for reclamation.

5A Remington on Bankruptcy, § 2409 (5th ed. 1953). We have, however, stated two prerequisites for a court to have summary jurisdiction to issue a turnover order:

> (1) the money or property directed to be delivered to the trustee or other officer of the court must be a part of the Debtor's estate; and (2) the person ordered to turn it over must have had it in his possession or under his control at the time of the Turnover Order.

Sherr v. Sierra Trading Corp., 492 F.2d 971, 976 (10th Cir. 1974).

■ Thus, to obtain a turnover order, the trustee is required to show that the property is part of the bankrupt estate. 2 Collier, *supra,* ¶ 23.10[2]. Appellee in a memorandum to the trial court states that the funds on deposit are clearly within 11 U.S.C. § 110(a)(5),[2] property

the bankrupt could have transferred, and consequently, the funds are part of the bankrupt estate. Appellants have not argued the funds were not transferable. Although better practice would have been for the bankruptcy judge to make a finding on this issue, we do not think the failure to make a specific finding is reversible error here.

■ Appellants' arguments concern title to the funds. Needless to say, seizing property without determining ownership in an ancillary jurisdiction is a questionable practice. It has been condemned by some courts. In re Mid-West Tar Products Corp., 150 F.Supp. 163 (D.Md.1956), and cases cited therein. We cannot say the ancillary court was required to determine ownership of the property in this proceeding. That court did have summary jurisdiction over the funds and properly issued a turnover order.

We, of course, can only speculate as to the future course of this litigation. Appellees have suggested that the title issues must be tried in the primary bankruptcy court. We merely note that 11 U.S.C. § 11(a)(20) sets out the limits on ancillary jurisdiction.

Affirmed.

---

**2.** 11 U.S.C. § 110 provides in pertinent part: "(a) The trustee of the estate of a bankrupt . . . upon his . . . appointment and qualification, shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered . . . .."