400 So.2d 268 (1981)
Boris F. NAVRATIL
v.
James H. SMART, d/b/a Road Runner Wrecker Service, et al.
No. 13912.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
*269 J. Rodney Ryan, Baton Rouge, for plaintiff-appellant Boris F. Navratil.
Bryan E. Bush, Jr., Baton Rouge, for defendant-appellant James H. Smart d/b/a Road Runner Wrecker Service.
Charles K. Watts and Robert L. Kleinpeter, Baton Rouge, for defendant-appellee Associates Financial Services Co., Inc.
*270 Before COVINGTON, CHIASSON, PONDER, LEAR and WATKINS, JJ.
CHIASSON, Judge.
Plaintiff, Boris F. Navratil, sued for damages for the unlawful conversion of his automobile by defendants, James H. Smart, d/b/a Road Runner Wrecker Service and Associates Financial Services Company, Inc. (Associates). The trial court rendered judgment in favor of the plaintiff and against Smart for $1,500.00 for loss of use of his vehicle and inconvenience. Plaintiff's suit against Associates was dismissed. Both Navratil and Smart appealed.
The undisputed sequence of events of this case is correctly stated by the trial court in its written reasons for judgment, as follows:
"The events of this drama arose on Bennington Avenue which is located in a growing area of Baton Rouge. Several nightclubs, business establishments, and restaurants are compacted into this area. Because this area attracts so many people, vehicular parking has become a major concern especially to the business firms and restaurants. Associates, one of the business firms in this area, had sustained a large amount of damages which was allegedly caused by persons parking in their lot while patronizing the surrounding nightclubs. To solve this problem and protect their property, Herbert Fink, branch manager of Associates, authorized Smart to remove vehicles which were illegally parked after hours on Associates' property. [Exhibit P-1]. Five signs were installed on Associates property. These signs stated `Customer Parking Only, others will be towed away at owner's expense.' Smart testified that two of these signs were located on each side of the drive leading to the street, two were located in the back lot, and one was located in the side lot.
"On weekend nights Smart would survey the Associates' parking lot. If any vehicles were parked illegally in the lot, he would proceed to tow them away one at the time. He would bring these vehicles to a fenced lot on Airline Highway where they would be stored until the owner paid Smart towage and storage fees.
"The plaintiff, an attorney, spent the evening of April 6, 1979, entertaining a client and other friends. Around midnight the plaintiff decided to end the evening's festivities with a nightcap at the Split Decision which is one of the nightclubs located on Bennington Avenue. Being unable to locate a vacant parking spot in the club's lot, the plaintiff spied an empty space in the Associates' parking lot which was almost completely occupied. The plaintiff parked his Lincoln in the southeast corner of the side parking lot. While the plaintiff and his client imbibed Smart made his rounds, noticed the Associates' lot was filled with illegally parked cars and proceeded to tow the cars to the pound, including the plaintiff's Mark IV. When the plaintiff alighted from the Split Decision with his client, he found that his vehicle was missing. Thinking it was stolen, the plaintiff called the Baton Rouge City Police who informed him that his car had been towed away by Road Runner Wrecker Service. Shortly thereafter, the plaintiff telephoned Road Runner Wrecker Service, but received no answer. The plaintiff had his son pick him and his client up and take them home. The next morning the plaintiff contacted Smart and demanded the return of his vehicle. Smart refused until the plaintiff paid him towage and storage fees in the amount of $57.50. This suit was filed the following Monday."
The only factual matter that was disputed at the trial was whether the signs were up on the night of this incident. Smart testified that the signs were posted that night while Navratil denied the presence of the signs. We agree with the further finding of fact of the trial court that there was no sign either at the entrance of the parking lot of Associates or where the plaintiff eventually parked his car.
*271 The trial court found that the initial towing of plaintiff's car was not an unlawful act. It found that Associates had taken "reasonable effort to keep their property free of intruders." The signs, contend the trial court, warned noncustomers of the consequences of noncompliance. The court concluded that "Associates and Smart had the right to remove these vehicles, including the plaintiff's, and charge towing and storage fees" citing the case of Hopper v. Bills, 255 La. 628, 232 So.2d 296 (1970). We do not think that case stands for such a proposition and therefore reverse the trial court on this initial determination.
The Hopper case cited by the trial court does not stand for the proposition that a private property owner can use the "self-help" of a wrecker service to remove a vehicle from his property. In Hopper, supra, the State Police requested a wrecker service to remove a vehicle that had overturned near the highway and which constituted a traffic hazard. The Supreme Court concluded that the wrecker service was acting with authority from the State Police who were exercising their police power.
The question that is presented to us is whether a private property owner can take whatever means he determines to remove a vehicle from his property that is trespassing on it or is on his property without the landowner's consent.
In defining the legal criteria for finding a trespass, the trial court correctly stated that:
"* * * To be a trespasser it must be shown that the party entered the premises despite evidence indicating the desire of the owner to maintain the privacy of his premises or where the property is such that the intruder would be well aware that his entry would be against the owner's wishes. An example of the latter would exist in the case of a private yard or estate where a residence is located. However, where the owner of the property attempts to attract business patrons, the owner's intention in restricting activity must be clearly manifested to the public. This can be done by erecting fences or maintaining other restraining devices which evidence the owner's intent to limit entry on his property."
According to the trial court, Associates had demonstrated to noncustomers its intention to restrict activity on its parking lot. However, in this case the court made a determination that no signs were visible to the plaintiff when he parked his car in the almost completely filled parking lot. We must conclude that there was no manifestation to the public or to the plaintiff at this time that Associates wanted to restrict the use of its parking lot.
Next we must consider whether the towing away of plaintiff's car was a right vested in a property owner or whether the actions amounted to "self-help" which is shunned by the courts.[1] Neither of the defendants have cited any law, statute or case, that gives them the right as property owners to remove unwanted movables from their property.
Plaintiff, on the other hand, contends that the defendants cannot take such action but must resort to legal proceedings. In support of his contention he analogizes to the situation where the courts frown upon creditors seizing property that they have a legal lien on. He argues that Associates does not have as strong a legal claim to plaintiff's property as some of those creditors.[2] Plaintiff also cites Civil Code Article 688 which prohibits a landowner from cutting or removing branches from his neighbor's trees that have come onto his property. *272 Finally, he also cites Civil Code Article 667 and its construction in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971) for the proposition that a landowner is liable to third parties for injuries suffered by them due to noxious substances.
None of these contentions directly determine the predicament that many private landowners are faced with. As is the case here the practice of parking a car for a period of hours on Friday and Saturday nights would not be adequately remedied by landowners who would have to wait until Monday morning to file an injunction prohibiting these people from parking their cars. On the other hand, the tolerance of letting people park on one's property without permission infringes on the landowner's right to "acquire, own, control, use, enjoy, protect and dispose of private property."[3] Plaintiff makes one other contention in his brief that the landowner could have had the City Police Department issue a ticket to plaintiff for parking on private property according to Title 11, Section 17 of the Baton Rouge Traffic Code.
Our limited holding is that under the circumstances presented by this case the towing away of plaintiff's car by Smart under contract with Associates was illegal.[4] The illegality consisted of using self-help in the removal of plaintiff's vehicle without adequate warning to the public of Associates' desire to restrict parking on its property.
The illegality of taking plaintiff's car amounted to a conversion which, although is of common law descent, is recognized as actionable as a tort in Louisiana law under Civil Code Article 2315. This actionable wrong was recognized by the Supreme Court in Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957). See also Deshotels v. Statewide Trailer Sales, 333 So.2d 259 (La.App. 1st Cir. 1976).
The trial court found that no conversion had occurred until Smart refused the request of Associates to release the vehicle to the plaintiff. We find that Associates, as principal, was liable to the plaintiff until Smart, as Associates' mandatory, denied Associates' request to release plaintiff's vehicle. Up until that time both parties are liable and after this period Smart alone is responsible for the unlawful detention of the vehicle.
The reason for the detention asserted by Smart is that the car was the only security he had to be compensated for his expenses in towing and storing the car. This reasoning is not valid and Smart had no right to retain possession of the car. As stated by the Supreme Court in previously granting the supervisory writs in this case: "The defendant has retained possession of the vehicle without any right to do so."[5]
Smart also contends that he was possessing for Associates initially and that Associates cannot in midstream change its position. We do not find any merit in this contention. Smart was only a mandatory of Associates by way of the letter of agreement between the two. Associates revoked the mandate when it requested Smart to return plaintiff's vehicle. Once that mandate was revoked, Smart was liable for any consequences which exceeded his authority. La.C.C. art. 3010. The expenses and losses incurred by Smart should have been reimbursed by the principal, Associates. La.C.C. arts. 3022 and 3024. Nothing in this opinion derogates from any rights Associates may have against the plaintiff.
Our final determination is on the question of damages. The trial court awarded plaintiff $1,500.00 for loss of use of his car and inconvenience. We now modify this award due to our determination above.
*273 The plaintiff seeks the following damages: $3,000 for loss of use of vehicle; $2,000 for depreciation of vehicle; $5,000 for shock, embarrassment, humiliation and inconvenience; $112 for repair of air conditioner; $98 for loss of radar detector unit; and $5,000 for attorney's fees for dissolving an illegal seizure.
It was established that the rental value of a like car would be $500 a month. The car was towed away on April 6, 1979 and returned to the plaintiff in mid July. The award of $1,500 for loss of use of the car is affirmed. Awards for depreciation of a vehicle illegally seized and shock, embarrassment and inconvenience are compensable items. Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958), Peterson v. Olinde Hardware & Supply Co., 356 So.2d 92 (La. App. 1st Cir. 1978). We think the evidence supports a finding of $1,500 for depreciation and $500 for the shock, humiliation and inconvenience.
In regard to attorney's fees, the plaintiff contends that he should be compensated since such fees are awarded for dissolution of judicially sanctioned seizures. La.C.C.P. art. 3608. He argues that it would be an injustice if a person could not receive an award for dissolution of an illegal seizure. The general rule is that "attorney fees are not allowed except when authorized by statute or contract." Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La. 1978). There is no contract between the plaintiff and the defendants that provides for such fees and the legislature has not provided any law for compensation of attorney's fees in this instance. As sympathetic as we are to this plaintiff, an award of attorney's fees cannot be maintained.
No evidence was presented as to the value of the radar detector unit nor that the air conditioning unit was broken due to the fault of defendant. Therefore, we agree with the denial of these awards by the trial court.
Finally, Associates and Smart contend that Mr. Navratil should have mitigated his damages by initially paying the towing and storage fees to retain his car. Navratil was under no duty to pay for the return of his illegally seized automobile. The record shows that Navratil made demand for his car on the Saturday morning but to no avail. He then resorted to the courts for legal help, via injunction, to secure his vehicle on the following Monday. Having resorted to summary legal action as soon as possible fulfills the requirement to mitigate one's damages. See Weber v. McMillan, 285 So.2d 349 (La.App. 4th Cir. 1973).
The judgment of the trial court is reversed in part, modified in part and affirmed in part. Judgment is rendered in favor of the plaintiff, Boris F. Navratil, and against the defendants, James H. Smart, d/b/a Road Runner Wrecker Service and Associates Financial Services Company, Inc., in the sum of $3,500 with interest thereon from date of judicial demand, until paid, and for all costs of these proceedings. Associates is liable in solido with Smart in the sum of $1,500 and costs; and Smart is individually liable for the remainder in the sum of $2,000.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
COVINGTON, Judge, dissenting.
I dissent. I find that the trial court's reliance upon Hopper v. Bills, 255 La. 628, 232 So.2d 296 (1970), is well placed. A landowner has a right to use reasonable means to remove a trespasser's property from his premises. The towing away and storage of the Navratil vehicle under the circumstances of this case were reasonable. Conversion, a wrongful act, cannot spring from the exercise of a legal right, i. e., the landowner's right to enjoy his property to the exclusion of others [LSA-C.C. art. 491; see Giroir v. Dumesnil, 248 La. 1037, 184 So.2d 1 (1966).] See Commercial Credit Equipment Corporation v. People's Loan Service, Inc., 351 So.2d 852 (La.App. 2 Cir. *274 1977); Bryant v. McCann, 297 So.2d 262 (La.App. 3 Cir. 1974). Associates was entitled to protect its premises by reasonable means from trespassing motorists. I think the measures taken by Associates were reasonable and justified.
The record reflects the following facts: On Friday night, April 6, 1979, Navratil, an attorney, was hosting another attorney and went down to the area of Bennington Avenue in Baton Rouge for a nightcap. The area had several "Disco-type" clubs and the clubs did not have a sufficient number of parking places. After cruising the area, looking for a place to park, plaintiff chose the night club known as "The Split Decision," and he parked in the parking lot of Associates, which was nearby.
Associates had had a considerable problem with non-customers parking on its premises after its business hours. Its vice-president testified that the unauthorized parking on its premises resulted in trash on the premises and damages to the building, including broken windows, broken shutters, and the lawn being damaged by ruts in wet weather. He testified that every Monday, prior to opening, he had to pay his janitor extra money to come down and clean up the liquor bottles, beer cans, etc. In an effort to stop this, defendant Smart, on January 19, 1979, had been given a letter from Associates, authorizing him "to remove cars which are illegally parked on my property after hours." Parenthetically, Smart testified that Associates at that time had five signs on the premises; other evidence indicated that they read "CUSTOMER PARKING ONLY OTHERS WILL BE TOWED AWAY AT OWNERS EXPENSE." Plaintiff testified that there was no sign,[1] although Smart testified that Navratil was parked "right in front of one of their signs."
About 1:00 A. M., plaintiff and guests came out of the nightclub, and the car was missing. He returned to the establishment, called the city police to report his car as stolen, whereupon the police told him that it may have been towed away by Road Runner Wrecker Service (Smart), a defendant herein. The police also gave Navratil the name and telephone number of Road Runner. He allegedly called the number but it did not answer. Later that same morning, Saturday, at about 10 A. M., he called Smart and was informed that Road Runner had the car and that it would cost plaintiff $57.50 cash to get it back.
On Monday, plaintiff informed Smart that he intended to file suit against him if he did not return the car at no cost to Navratil. Smart refused to return it, and Navratil filed suit on April 9, 1979. A court order was obtained, and Smart delivered the car to plaintiff on or about July 16, some three months after Road Runner had picked it up.
In the interim, Associates, about three or four weeks after the towing, and subsequent to suit being filed, instructed Smart, by telephone, followed up with a letter, to release the car, but Smart did not do so.
The evidence clearly reveals that any reasonable person would have realized that Associates' property was not a public parking lot or a parking lot for the customers of "The Split Decision," the night club selected by plaintiff in which to entertain a client and other friends. Trespassers were clearly forewarned.
I agree with the trial judge's decision and his written reasons for judgment; hence, I would affirm the trial court's judgment and adopt his written reasons for judgment, attached hereto as Appendix A, as the opinion of this Court. Therefore, I respectfully dissent from the majority opinion.
*275
 APPENDIX A
BORIS F. NAVRATIL : NUMBER 223,154 DIVISION F
VERSUS : 19TH JUDICIAL DISTRICT COURT
JAMES H. SMART d/b/a ROAD : PARISH OF EAST BATON ROUGE
RUNNER WRECKER SERVICE AND
ASSOCIATES FINANCIAL SERVICES : STATE OF LOUISIANA
COMPANY, INC.

WRITTEN REASONS FOR JUDGMENT
The plaintiff, Boris F. Navratil, brought this suit to recover damages that resulted when his 1974 Lincoln Continental Mark IV was towed away by the defendant, James H. Smart d/b/a Road Runner Wrecker Service, from the premises owned by the defendant, Associates Financial Services of America, Inc. The plaintiff asserts that Smart has converted the vehicle to his own use with the aid of Associates Financial Services of America, Inc., hereafter referred to as Associates. By two supplemental and amending petitions, the plaintiff sought a preliminary injunction and an increase in the amount of damages.
This court first became acquainted with some of the facts of this case when plaintiff's rule for a preliminary injunction was pending. This rule was vacated by this court, and writs were refused by the First Circuit Court of Appeal. Supervisory writs were granted by the Louisiana Supreme Court. The court found that the plaintiff was entitled to injunctive relief and stated, "The defendant has retained possession of the vehicle without any legal right to do so..... Furthermore, an injunction may lie against an illegal act." Navratil v. Smart, et al. [373 So.2d 544], No. 64,946, La.S.Ct., July 2, 1979.
It is not for this court to interpret the extent of the Supreme Court's ruling. It is manifestly clear from its ruling however, that one is entitled to injunctive relief under the circumstances of this case. In light of the posture of this case when it was submitted to the Supreme Court, it is doubtful that a determination on the merits was intended without a complete trial. Because the equities are strong, a careful review of the facts is necessary at this point.
The events of this drama arose on Bennington Avenue which is located in a growing area of Baton Rouge. Several nightclubs, business establishments, and restaurants are compacted into this area. Because this area attracts so many people, vehicular parking has become a major concern especially to the business firms and restaurants. Associates, one of the business firms in this area, had sustained a large amount of damages which was allegedly caused by persons parking in their lot while patronizing the surrounding nightclubs. To solve this problem and protect their property, Herbert Fink, branch manager of Associates, authorized Smart to remove vehicles which were illegally parked after hours on Associates' property. [Exhibit P-1] Five signs were installed on Associates property. These signs stated "Customer Parking Only, others will be towed away at owner's expense." Smart testified that two of these signs were located on each side of the drive leading to the street, two were located in the back lot, and one was located in the side lot.
On weekend nights Smart would survey the Associates' parking lot. If any vehicles were parked illegally in the lot, he would proceed to tow them away one at the time. He would bring these vehicles to a fenced lot on Airline Highway where they would be stored until the owner paid Smart towage and storage fees.
The plaintiff, an attorney, spent the evening of April 6, 1979, entertaining a client and other friends. Around midnight the *276 plaintiff decided to end the evening's festivities with a nightcap at the Split Decision which is one of the nightclubs located on Bennington Avenue. Being unable to locate a vacant parking spot in the club's lot, the plaintiff spied an empty space in the Associates' parking lot which was almost completely occupied. The plaintiff parked his Lincoln in the southeast corner of the side parking lot. While the plaintiff and his client imbibed Smart made his rounds, noticed the Associates' lot was filled with illegally parked cars and proceeded to tow the cars to the pound, including the plaintiff's Mark IV. When the plaintiff alighted from the Split Decision with his client, he found that his vehicle was missing. Thinking it was stolen, the plaintiff called the Baton Rouge City Police who informed him that his car had been towed away by Road Runner Wrecker Service. Shortly thereafter, the plaintiff telephoned Road Runner Wrecker Service, but received no answer. The plaintiff had his son pick him and his client up and take them home. The next morning the plaintiff contacted Smart and demanded the return of his vehicle. Smart refused until the plaintiff paid him towage and storage fees in the amount of $57.50. This suit was filed the following Monday.
Initially, it must be determined whether a property owner has the right to remove from his premises personal property belonging to another without recourse to legal action. Further, if it is found that the defendants acts constituted a conversion of the plaintiff's vehicle, it must decide what damages are due.
Civil Code Article 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Although conversion is a common law term, it has been used by the courts of this state. It is one of the "acts" contemplated by our Civil Code in Article 2315. Conversion is the wrongful denial of another property owner's rights. It is only necessary to show that one intended to exercise dominion over another's property without the owner's consent: bad faith is not required. Lincecum v. Smith, 287 So.2d 625 (La.App. 3rd Cir. 1973), writ refused, 290 So.2d 904 (La.1974). Ownership of property, either moveable or immoveable, confers the right of exclusive use and enjoyment of the thing. Civ.Code Article 477. However, in the present situation, the property rights involved give rise to competing equities, and it must be determined whether the landowner has impinged on the personal property owner's rights thereby converting the property to his own use.
A property owner may use reasonable methods to prevent others from using his property. It is not mandatory to file criminal trespass proceedings against an intruder in order to prevent entry on ones property. The nature and character of the property will govern the extent to which a property owner must manifest his intention to keep his property free of illegal entry in order that the landowner legally deprive the intruder of any vested rights. Although this court recognized that the classifications of trespasser-licensee-invitee were abrogated in Cates v. Beauregard Electric Cooperative, 328 So.2d 367 (La.1976), cert. denied [429 U.S. 833], 97 S.Ct. 97 [50 L.Ed.2d 98] (1976), this court will use the term trespasser since this case deals with the civil effects of an alleged criminal trespass. A trespass is the "unlawful physical invasion of the property or possession of another." Patin v. Stockstill, 315 So.2d 868 (La.App. 1st Cir. 1975). To be a trespasser it must be shown that the party entered the premises despite evidence indicating the desire of the owner to maintain the privacy of his premises or where the property is such that the intruder would be well aware that his entry would be against the owner's wishes. An example of the later would exist in the case of a private yard or estate where a residence is located. However, where the owner of the property attempts to attract business patrons, the owner's intention in restricting activity must be clearly manifested to the public. This can be done by erecting fences or maintaining other restraining devices which evidence the owner's intent to limit entry on his property.
Associates employed the use of signs to warn noncustomers that their cars would be *277 towed away at their expense. Associates, though a business establishment, intended to limit the use of their parking to their customers only.
The plaintiff testified that no signs were up at the entrance of Associates' parking lot or where he parked his car. Pictures taken on the following Monday showed there were no signs in place when the pictures were taken. Exhibits P-2, 3, 4, 5, 6, 7, 8. Although Smart admitted that these signs were sometimes torn down, he stated that two of the signs were in place on Friday nightone in the back and one at the entrance. This court finds that the signs at the entrance of the drive and on the side parking lot were missing on the date of this incident. However, other signs were erected in the lot and Associates manifested a bona fide effort to prohibit the use by noncustomers of their parking lot both day and night. Associates made every reasonable effort to keep their property free of intruders. It is unreasonable to require the owner to erect a fort around his property to protect it from intruders. The signs adequately warned the public that their vehicles would be towed away at their expense if they were not an Associates' customer. The fact that flagrant trespassing existed on the night of April 6, 1979, does not show implied consent by Associates especially since Smart continued to tow these cars away as quickly as possible.
Additionally, although the United States and Louisiana Constitutions provide that a person should not be deprived of their property except by due process of law, these restrictions only apply to state action and not private action. Vangraff, Inc. v. McCearley, 314 So.2d 483 (La.App. 1st Cir. 1975), writ denied 320 So.2d 549 (La.1975). Noncustomers were aware of the consequences if they chose to ignore the warning signs. Therefore, Associates and Smart had the right to remove these vehicles, including the plaintiff's and charge towing and storage fees. Hopper v. Bills, 255 La. 628, 232 So.2d 296 (La.1970).
However, a month after this incident, Sam Davis, an employee of Associates, instructed Smart to release the plaintiff's vehicle. Smart refused to do so. At this point, Smart converted plaintiff's vehicle to his own use. Once Smart's mandate was revoked, any future action by Smart exceeded his authority making Smart liable for any consequences. LSA Civil Code Article 3010. He illegally detained the plaintiff's vehicle against his principal's wishes thereby depriving Navratil of his property. Because the principal must pay his agent's expenses, Smart should have looked to Associates to be reimbursed for his expenses. Civil Code Article 3022.
The plaintiff claims he should be compensated for the depreciated value of his car. This court does recognize that plaintiff's Lincoln was held during the gasoline crisis. However, since the car was returned, plaintiff is not entitled to the value of the car at the time the property was converted. Moreover, the fact that the plaintiff lost his option to sell his car is purely speculative. Since this court determined that no conversion initially occurred, the plaintiff's claim for embarrassment and humiliation is not allowable especially in light of the plaintiff's own testimony. The court limits the plaintiff's damages to loss of use of the vehicle and inconvenience in the amount of $1500.00. However, since Smart was entitled to towage and storage fees, Smart is entitled to a set off in the amount of the towage fee plus storage fees until Smart's agency relationship terminated concerning this vehicle. Because the plaintiff presented no evidence on the value of his missing radar detector, this claim is disallowed.
Generally, attorney's fees are not included in a damage award unless they are authorized by statute or contract. Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La. 1978). Attorney's fees have been allowed when there is a wrongful seizure, but these fees are limited to the situation when a conservatory writ is dissolved. Cvitanovich v. Sorli, 347 So.2d 1204 (La.App. 1st Cir. 1977). Attorney's fees have not been awarded in cases where a writ has been issued; accordingly no attorney's fees are allowed.
*278 For reasons set forth, there is judgment in favor of the plaintiff, Boris F. Navratil, and against the defendant, James H. Smart d/b/a Road Runner Wrecker Service, in the amount of $1500.00 plus legal interest from the date of judicial demand and all costs of these proceedings. Mr. Smart is entitled to a credit in the amount of the towage and storage fees up to the time Associates instructed Mr. Smart to release the vehicle to the plaintiff. Further, there is judgment in favor of the defendant, Associates Financial Services of America, Inc., dismissing plaintiff's suit against them with prejudice.
Judgment will be signed accordingly.
Baton Rouge, Louisiana, this 28th day of April, 1980.
 /s/ Lewis S. Doherty, III 
 Lewis S. Doherty, III, Judge
 Division "F"
 19th Judicial District Court
NOTES
[1] In Kunde v. Biddle, 41 Ill.App.3d 223, 353 N.E.2d 410 (1976) and Murrell v. Trio Towing Services, Inc., 294 So.2d 331 (Fla.App.1974), the plaintiffs conceded the right of the property owners to remove their vehicles.
[2] In support of this contention, plaintiff cites Samaniego v. Horseless Carriage, Inc., 350 So.2d 193 (La.App. 2nd Cir. 1977) writ denied 352 So.2d 240 (La.1977); Martinez v. Therma-King Sales & Serv. Div., 346 So.2d 798 (La. App. 1st Cir. 1977) writ denied 349 So.2d 884 (La.1977).
[3] 1974 La.Const. Art. I, Sec. 4.
[4] Associates did admit that they erected a fence around the property eventually to prohibit people from parking in its lot.
[5] See Kunde, supra, and Murrell, supra.
[1] This case received some local publicity and Mr. Navratil admitted, on trial, that he was probably correctly quoted in one newspaper as saying "... even if the sign had been where I could see it, even if they had a big sign draped over the entrance, I probably would still have parked there. The sign said `customers only.' This was midnight on Friday, I knew they weren't going to have any customers until Monday morning." Plaintiff's photograph, with his car, accompanied the story.