408 So.2d 325 (1981)
SEABOARD ALLIED MILLING CORPORATION, Plaintiff-Appellee,
v.
Guy BENITEZ, d/b/a Guy's Towing Service, Defendant-Appellant.
No. 8496.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
*326 Breazeale, Sachse & Wilson, Pamela A. Prestridge, Baton Rouge, for plaintiff-appellee.
Charles N. Wooten, Ltd., Dan Keefe, Lafayette, for defendant-appellant.
Before CULPEPPER, CUTRER and STOKER, JJ.
CUTRER, Judge.
Seaboard Allied Milling Corporation (Seaboard) owned a tractor-trailer vehicle which was involved in an accident near Lafayette. Seaboard brought suit against Guy Benitez, d/b/a Guy's Towing Service (Guy's), for damages due to the wrongful sequestration of the vehicle. Guy's reconvened for the amount due for services performed in connection with the removal of the vehicle and its contents from the accident scene. From a judgment which reduced Guy's claim and dismissed Seaboard's suit, both parties appeal. We amend and affirm.
The facts presented in this case are as follows:
A tractor-trailer rig, loaded with 450 sacks of flour and owned by Seaboard, overturned in the median of Interstate 10 near the Henderson, Louisiana exit at approximately 1:30 A.M., on May 8, 1980. The truck was enroute to Seaboard's plant in Port Allen, Louisiana. Troop I of the Louisiana State Police received notice of the accident at approximately 1:36 A.M. and dispatched a trooper to the scene.
Upon arrival, it was discovered that the driver was pinned in the truck cab. The desk sergeant placed a call to defendant's wrecker service, Guy's, requesting service. Two wreckers, one heavy duty and one extra-heavy duty, were dispatched to the scene. The truck was lifted and turned back upon its wheels. The driver was extricated and sent to the hospital.
Guy's was then asked to clean up the accident scene. Some of the flour bags had broken open spilling the flour around the wreckage. Guy's dispatcher contacted R. J. Arceneaux (R. J.'s), a rental firm, to obtain a flatbed tractor-trailer upon which the undamaged sacks of flour could be loaded. R. J.'s complied with this request. Guy's did not have the needed equipment to do the cleanup job.
Guy's dispatcher then contacted Supreme Contractors (Supreme) to secure a crew of workmen to clean the scene. Twelve men, including a supervisor, were sent to the scene. The unbroken sacks of flour were loaded and hauled to Port Allen. The crew proceeded to clean the spilled flour from the accident site. The wrecked tractor-trailer was towed to Lafayette and remained in the custody of Guy's in Lafayette until June 2, 1980.
Seaboard received word of the accident whereupon the plant manager, Robert Clear, contacted Guy's at 8:15 A.M. to ascertain what arrangements had been made. Clear then proceeded to Lafayette after being informed that all necessary arrangements were made. All arrangements for the cleanup were made by Guy's as it assumed responsibility to work the accident site. Thereafter, Seaboard received an invoice from Guy's in the amount of $4,743.49 *327 for all services rendered. Seaboard contacted the State Police Troop I to see if any adjustments could be made to the bill. Only negligible adjustments were mentioned. Seaboard contacted Guy's to discuss the charges but these discussions proved unfruitful as Guy's refused to release the tractor-trailer until its bill was paid. Other discussions took place until June 2, 1980, when Seaboard, after concluding further discussions to be pointless, filed a petition and bond in the district court requesting the release of the tractor-trailer from sequestration and claimed damages for its wrongful detention. An order was signed releasing the tractor-trailer to Seaboard after a security bond was posted. Seaboard took the tractor-trailer to Baton Rouge for repairs.
Seaboard amended its original petition claiming conversion of a bumper, driveline and battery from the tractor (all of which were returned) and demanded attorney's fees for the wrongful sequestration. Guy's answered and reconvened seeking the full amount of its claims and also sought attorney's fees contending that the debt Seaboard owed was an open account.
After trial on the merits judgment was rendered in favor of plaintiff-in-reconvention, Guy's, for the sum of $2,962.43, with legal interest from date of demand until paid. Guy's demand for attorney's fees were denied. Seaboard's claims were dismissed. Both parties appealed: Guy's appealed seeking to receive the full amount claimed and attorney's fees; Seaboard appealed claiming the amount for storage to be excessive and seeking damages for the loss of use of the vehicle and attorney's fees.
The issues raised by the parties on appeal are:
(1) Whether the trial court erred in ruling that the detention of Seaboard's vehicle was legal and produced no basis for damages for attorney's fees;
(2) Whether the trial court erred in its finding that Guy's charges for services were excessive; and
(3) Whether Guy's is entitled to attorney's fees.

WRONGFUL DETENTION OF VEHICLE
Seaboard styles the detention of its vehicle by Guy's as a sequestration. It should be noted that Guy's did not have a writ of sequestration issued. It merely detained the vehicle in question for the amount claimed by it for services rendered. Seaboard contends that such detention was wrongful.
A very similar situation was present in Hopper v. Bills, 255 La. 628, 232 So.2d 296 (La.1970), wherein plaintiff, owner of a logging truck and trailer, sued defendants, the owners of the wrecker service, for illegal seizure and wrongful detention of their vehicle. The wrecker service was called to the scene of the accident on November 19, 1966, by the State Police, to remove an overturned log truck. The truck was righted and removed to defendants' truck stop. Plaintiff inquired concerning the release of the truck on December 1, 1966, whereupon defendants agreed to release the vehicle only after payment of towing and storage charges. On January 4, 1967, plaintiff caused a writ of sequestration to be issued making him the custodian of the vehicle.
The Supreme Court affirmed the Court of Appeal's finding that the defendants had a lien on plaintiff's vehicle for their expenses and that no unlawful conversion or detention occurred. The seizure was not illegal as the State Trooper, pursuant to LSA-R.S. 32:2, et seq., had the discretion to have vehicles removed from the highway which could cause driving hazards. This same provision applies in the case at hand.
As to whether the legal seizure can be converted into an unlawful conversion or detention, the Supreme Court stated:
"`Acts which would otherwise constitute a conversion may be considered not to be a conversion, where they are done by authority of law, by direction or order of a court, or by authority of valid process. ***'....
* * * * * *
"`... And even when he has possession, a qualified refusal, for a reasonable *328 purpose and for a reasonable length of time, is not a conversion.....'
* * * * * *
"We find from the record that the defendants acted in good faith; they acted under a valid process. Their refusal to surrender plaintiff's vehicle was qualified; under our findings supra, they were entitled to their charges, and until such were paid, they were entitled to retain possession of plaintiff's truck and trailer. They did not wrongfully deprive plaintiff of his vehicle; defendants committed no illegal conversion or unlawful detention by their actions of refusing plaintiff possession of his vehicle under the conditions of his demand." (Citations omitted.)
The Supreme Court made a ruling in Hopper by construing Civil Code articles 3224 and 3225. These articles provide as follow:
LSA-C.C. art. 3224;
"He who, having in his possession the property of another, whether in deposit or on loan or otherwise, has been obliged to incur any expenses for its preservation, acquires on this property two species of rights."

LSA-C.C. art. 3225;
"Against the owner of the thing, his right is in the nature of that of pledge, by virtue of which he may retain the thing until the expenses, which he has incurred, are repaid.

"He possesses this qualified right of pledge, even against the creditors of the owner, if they seek to have the thing sold. He may refuse to restore it, unless they either refund his advance, or give him security that the thing shall fetch a sufficient price for that purpose."

Also construed within this framework is LSA-R.S. 9:4501, which grants a repairman's or mechanic's lien against the object repaired which can be enforced by a writ of sequestration. Even though no writ of sequestration was sought nor any repairs made to the vehicle, Guy's had a qualified right to retain the vehicle until security was posted or the claim paid.

EXCESSIVE CHARGES
The charges submitted by Guy's to Seaboard for payment were as follows:

(1) 1 Heavy Duty Hydraulic Wrecker,
$100.00 per hour for 8 hours; $ 800.00
(2) 1 Heavy Duty Wrecker,
$65.00 per hour for 10 hours; 650.00
(3) 1 Flat Bed Truck, $45.00 per
hour for 6 hours; 270.00
(4) Storage, $20.00 per day for
22 days; 440.00
(5) Gaidry's Hardware; 40.59
(6) Labor to clean up spill,
12 men plus supervisor for 8 hours; 1,443.49
(7) Rental of tractor and low boy
from R.J.'s for one day; 880.00
(8) Labor and flat bed truck to
reclean site. 270.00
 _________
 Total................ $4,794.08

The court allowed the recovery in full of Items (1) through (5). Seaboard complains of only Item (4), the storage charge of $440.00. The trial judge held that the $440.00 charge for storage (22 days) of the vehicle was reasonable. Seaboard could have posted bond for the release of their vehicle to avoid these accruing charges. The rate charged for such storage, according to the evidence, was considered usual. We find that the determination by the trial judge awarding the storage fee is supported by evidence in the record and is not clearly wrong and must be affirmed.
The court reduced the labor charge for the cleanup in Item (6). The court reduced the wages charged from $10.10 per hour to $7.65 per hour for the laborers. A wage of $9.00 per hour was allowed for the supervisor. The trial court also only allowed wages for five laborers instead of twelve. The trial court allowed eight hours for the cleanup work. Such reduction by the trial court is supported by the record.
Richard Fox, Manager of Manpower of Lafayette, a labor contracting firm, testified that the "normal industrial unskilled rate" for labor in the Lafayette area was $7.25 per hour, with a four hour minimum for a crew. Supervisors are paid $9.00 per hour. Fox stated that he was not called by Guy's on the day in question but if he had *329 been called, he could have supplied a crew for the cleanup. The testimony was corroborated by Robert Clear, Plant Manager of Seaboard.
Clear also testified that Seaboard had other spills of this nature. Only five men were used for those cleaning jobs that lasted approximately four hours. He stated that Seaboard had a similar spill of 54,000 pounds of bulk wheat. The wheat was not in bags and had to be picked up with scoop shovels. This was accomplished by five men in less than five hours.
The trial court accepted the testimony of Fox and Clear and reduced the wage rate for the labor. We conclude that the record fully supports the trial court's reduction of these charges.
The trial court also reduced Item (7) which reflected a charge of $880.00 by R. J.'s for the one day rental of a tractor and low boy trailer. R. J. Arceneaux, owner of R. J.'s, testified that he usually leased trailers like the one used herein for $35.00 per day. The tractor is usually rented for $110.00 per day. Arceneaux explained that those rates applied if the rental took place after 8:00 A.M. He stated that, in this case, he was called at 1:00 A.M. and he charged $880.00 for the rental of the tractor and trailer. He stated that the extra charge was a surcharge for "inconvenience."
The evidence clearly reflects that Arceneaux was not called until approximately 7:00 A.M., one hour before the "convenient" time of 8:00 A.M. The trial court properly reduced the rental charges from $880.00 to $250.00. The testimony of Arceneaux supports such a reduction.
The trial judge disallowed Item (7) which was the $270.00 charge by Guy's for recleaning the site. The trial court held that this charge was "absolutely absurd" and disallowed it since the evidence reflected that, if the initial crew had performed their work properly, a recleaning would have been unnecessary. In view of the testimony, we cannot say that the trial judge was clearly wrong in arriving at this conclusion.
In addition to the labor charges furnished to Guy's by Supreme, for the cleanup which was reduced by the trial court, the invoice reflects charges for the use of a truck and tools that were used by the crew who performed the initial cleanup operation. The charge for the use of this truck and tools was $126.00. Also, an item, entitled "11% fuel surcharge," in the amount of $14.49 appears thereon. Arceneaux stated that this was an extra charge that had been initiated by the labor companies after fuel costs increased. The trial court's reasons for judgment make no mention of the disposition of those items. We conclude that such charges are reasonable and should be allowed. Counsel for both parties stipulated, as trial began, that a 20% "handling" fee should be awarded for the items furnished to Guy's by Supreme. This item will also be allowed. The judgment of the trial court will be amended to include those items.
We have re-computed the claim by Guy's for the services rendered by Supreme, taking into consideration the reductions made by the trial court and adding the charges above, and we conclude that a total of $622.18 would be the proper award to Guy's for the services rendered by Supreme.[1] By making these changes we arrive at a total award to Guy's of $3,073.47.[2] The trial court judgment will be amended accordingly.

*330 ATTORNEY'S FEES
The trial judge also denied attorney's fees to Guy's. We agree for two reasons. First, Seaboard properly points out that a claim for attorney's fees based upon an open account, LSA-R.S. 9:2781, must be strictly complied with. One of the provisions requires that the creditor make written demand correctly setting forth the amount owed. We agree with Scarborough v. Nelson, 371 So.2d 1261 (La.App. 3rd Cir. 1979), which denied attorney's fees as the demand was excessive to that amount actually owed.
Also, we find that there is actually no open account upon which a claim for attorney's fees can be claimed. Monlezun v. Fontenot, 379 So.2d 43 (La.App. 3rd Cir. 1979), defined an open account as:
"... a situation where there [had] been running or current dealings between the parties and the account [had] been kept open with the expectation of further dealings."

Here, it is obvious that there is only one occurrence which gives rise to the debt. This is not a situation where there were running or current dealings between the parties. The account was not held open with the expectation of further dealings. For these reasons we find the claim for attorney's fees to be unfounded and their denial proper.
For the reasons assigned, the judgment of the trial court is amended by increasing the award from $2,962.43 to $3,073.47. In all other respects the judgment of the trial court is affirmed. Seaboard is to pay all costs of this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] $ 378.00
Truck and Tools 126.00
Fuel Adjustment 14.49
 ________
 $ 518.49
 Plus 20% 103.69
 ________
 $ 622.18

[2] Computation of total award:
Guy's wreckers $ 1,450.00
 Guy's Flat Bed Truck Rental 270.00
 Storage 440.00
 Gaidry's Hardware 40.59
 Labor, Truck, Fuel Adjustment
 and 20% (Supreme) 622.18
 Tractor and Low Boy (R. J.'s) 250.00
 __________
 $ 3,073.47.