EDITH HOLLAN JONES, Circuit Judge:
The subject of this consolidated appeal by Merchants Trust & Savings Bank of New Orleans is a judgment entered in the district court for conversion of funds of the bankrupt estates, assessing damages of $96,000 and attorneys’ fees on behalf of the trustee and the intervenor totaling over $39,000. We AFFIRM the district court’s finding of liability and damages, but we REVERSE the award of attorneys’ fees.
Between May and August, 1979, Dr. Far-ber, a partner in each of the three debtor companies, participated in placing those companies in voluntary bankruptcy under Chapter XII of the former Bankruptcy Act. Subsequent to the filings, but before the appointment of a trustee, Dr. Farber purchased certificates of deposit (CD’s) with a total value of approximately $269,000 from Merchants in the names of the bankrupt entities with funds generated from their operations. Indulging his fondness for the horses, Dr. Farber pledged these certificates of deposit to Merchants as security for various loans to him personally or to Golden Angel Farms, Inc., which is apparently in the business of breeding, selling, and racing thoroughbreds. The attorney for the bankrupt entities eventually discovered that their funds had been pledged to Merchants, and he commenced turnover proceedings to recover them. Shortly *277 thereafter, William C. Sandoz was appointed trustee and substituted as plaintiff in the proceedings.
In December 1982, 25 B.R. 979, the bankruptcy court ordered Merchants to turn the CD’s over to the trustee. Pertinent to its decision, the court found that the funds used to purchase the CD’s were property of the bankrupts’ estates and that Dr. Farber had no authority to pledge them as security for nonpartnership debt. The court also held that Merchants’ acquisition of the funds could not be retroactively approved based on Merchants’ contentions that it was ignorant of the bankruptcies and that it accepted the funds in good faith following Dr. Farber’s written representation that he had authority to pledge the companies’ assets to secure even personal loans. In refusing retroactive approval, the bankruptcy court noted that Merchants loaned funds to Dr. Farber for over a year without ever conducting a personal credit review, seeking additional financial statements, or inquiring why Dr. Farber needed to refinance debt previously held by Whitney National Bank of New Orleans. Based on these findings, the court found wilful ignorance and lack of good faith on the part of Merchants. No issue of damages for the failure to turn over the bankrupts’ funds was tried in this proceeding because Merchants insisted that another trial would be necessary for this purpose.
Following the adverse decision of the bankruptcy court, Merchants posted a su-persedeas bond and unsuccessfully appealed to the district court. In March 1984, 729 F.2d 778, this court summarily affirmed the bankruptcy court’s determination, and the trustee immediately activated this action to recover damages and attorneys’ fees.[1]
Merchants strenuously contests the directed verdict on liability for conversion of the bankrupts’ funds. The district court concluded that principles of collateral es-toppel precluded Merchants’ relitigation of the essential issues underlying its liability for conversion. We agree. Ordinarily, under the Bankruptcy Act, the predecessor to the Bankruptcy Code of 1978, a turnover proceeding, filed by the trustee to recover funds or property of the bankrupt estate, does not and cannot adjudicate issues of title. See Burnham v. Todd, 139 F.2d 338, 341 (5th Cir.1943). See generally Maggio v. Zeitz, 333 U.S. 56, 62-64, 68 S.Ct. 401, 405, 92 L.Ed. 476, 483-84 (1948); In re Goldstein, Samuelson, Inc., 517 F.2d 324, 327-28 (10th Cir.1975) (quoting 5A Remington on Bankruptcy § 2409 (5th ed. 1953)). In this case, however, Merchants defended the turnover action by asserting that its acquisition of the bankrupt companies’ funds was made in good faith, without knowledge of the bankruptcies, and on the understanding that Dr. Farber had authority to pledge partnership funds, even for his personal benefit. Under certain circumstances, this “good faith” defense would have enabled the bankruptcy court to validate retroactively the pledges on which Merchants relied. See In Re American Cooler Co., 125 F.2d 496, 497 (2d Cir.1942). The bankruptcy court rejected this defense on the basis of the facts before it. The court also found that Dr. Farber had no authority to pledge assets of the bankrupt companies to secure personal debts. These issues were litigated, determined, and necessary to the bankruptcy court’s judgment in the turnover proceeding.
These findings preclude Merchants’ attempted relitigation of title to the CD’s in connection with the trustee’s subsequent action for conversion. The conversion case, predicated on La.Civ.Code Ann. art. 2315 (West Supp.1986), requires a determi *278 nation that a party has wrongfully exercised dominion over the property of another. See Harper Oil Field Serv. v. Dugas, 451 So.2d 96, 101 (La.App. 3d Cir.1984); Madden v. Madden, 353 So.2d 1079, 1081 (La.App. 2d Cir.1977). See also Import-sales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574, 575-77 (1957). It is not necessary that the defendant have wrongful intent, but only that he had no right to withhold another’s property. See Harper Oil, 451 So.2d at 101; Deshotels v. Statewide Trailer Sales, 333 So.2d 259, 260 (La. App. 1st Cir.1976). Thus, only a valid claim of title or right to possess can be a defense to a conversion action. See Harper Oil, 451 So.2d at 101; Seaboard Allied Milling Corp. v. Benitez, 408 So.2d 325, 327-28 (La.App. 3d Cir.1981); Lincecum v. Smith, 287 So.2d 625, 627-28 (La.App. 3d Cir.1973), writ ref'd, 290 So.2d 904 (1974). See generally Pontchartrain State Bank v. Duden, 503 F.Supp. 764, 768 (E.D.La. 1980) (because stock was validly pledged as security, there was no conversion). Consequently, in this case, where the adjudication of the turnover necessarily determined the issue of the right to possess, the court properly directed a verdict finding liability of Merchants to the trustee for conversion. We find no merit in Merchants’ many and various arguments directed to this issue.
Merchants challenges the $96,000 damage award for insufficiency of the evidence to support it. Because Merchants failed to move for a directed verdict at the close of the plaintiffs’ case, see Fed.R. Civ.P. 50(a), its motion for judgment notwithstanding the verdict on this point had no proper predicate. See Fed.R.Civ.P. 50(b). We can therefore review the evidence only to ascertain whether there was any evidence to support the jury’s verdict, irrespective of its sufficiency, or whether plain error was committed, which, if not acknowledged, would result in a gross miscarriage of justice. Stewart v. Thigpen, 730 F.2d 1002, 1006-07 (5th Cir.1984); Bunch v. Walter, 673 F.2d 127, 129-31 (5th Cir.1982). Merchants has not satisfied this difficult standard.
Under Louisiana law, if the property cannot be recovered, damages for conversion consist of the value of the property wrongfully appropriated plus interest, and any additional damáges for loss of use and enjoyment of the property, mental anguish, inconvenience, or humiliation. See Ortego v. Ortego, 471 So.2d 1106, 1110 (La.App. 3d Cir.1985); Navratil v. Smart, 400 So.2d 268, 273 (La.App. 1st Cir.), cert. denied, 405 So.2d 320 (1981). The trustee’s theory was that Merchants failed to roll over and reinvest the funds in the bankrupts’ certificates of deposit as they matured during the pendency of the turnover dispute. Periodic rollovers, together with capitalization of interest as it accrued, resulted in an alleged loss of over $96,000. Merchants responded that the certificate of deposit contracts forbade it to reinvest funds without express direction from their holder, in this case, the trustee. The trustee had never requested such action, testifying that to do so, in the face of the bank’s obstinacy, would have been a futile act. Merchants also demonstrated that the trustee ordinarily has a legal duty to invest funds under his control at the highest available rate. While the trustee, consistent with his duties to the bankrupt estate, should have promptly sought an agreement with Merchants to invest the funds in a legally authorized institution so that interest would be earned during the pendency of litigation and thus benefit the ultimate victor, we cannot say that the jury plainly erred in crediting the trustee’s theory of damages over that espoused by Merchants. Nor can we say that there was a manifest miscarriage of justice in the jury’s apparent belief that Merchants’ practice of automatically renewing the CD’s on behalf of Dr. Farber set a precedent that should have been followed after it learned of the trustee’s appointment. Merchants knew that applicable law would hold it liable for some damages for failure to turn over the CDs, or •for conversion, if it lost these cases. Ordinarily, such damages would be assessed in terms of lost interest. The jury’s finding, although generous, does not plainly misconstrue the evidence.
*279 Attorneys’ fees awarded to the trustee and Whitney National Bank, a permissive intervenor in the turnover and conversion litigation, are the subject of Merchants’ final, properly preserved, attack. Fees were assessed following a jury finding that Merchants’ defense of the two cases was vexatious, oppressive and harassing. Federal courts have traditionally enjoyed the power, originating in equity, to contravene the American rule, whereby litigants pay their own attorneys’ fees, “when the losing party has ‘acted in bad faith, vexatiously, wantonly, or for oppressive reasons.’ ” Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 247-59, 95 S.Ct. 1612, 1616-22, 44 L.Ed.2d 141, 147-54 (1975) (quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703, 713-14 (1974)). The purpose of this exception is to prevent abuse of the court system by parties which can best their opponents by simply spending time and attorneys’ fees in dilatory litigation. For this reason, we do not accept Merchants’ theory that attorneys’ fees could be considered only if permitted under Louisiana law as damages for conversion. The principle of compensation based on vexatiousness applies whenever the federal courts are made the tool of improper conduct, regardless whether state or federal law forms the rule of decision. Either the lack of legal foundation or the abusive nature of litigation tactics employed by a party could support an award of attorneys’ fees against it. Defeat at trial, however, is not alone sufficient to justify a fee award to an opponent under the equitable rule. In this case, Merchants lost the turnover proceeding at trial and, having superseded the judgment, exercised its legal right to appeal through two levels of review. Merchants properly sought an abatement of this conversion action, originally filed in March 1983, while appeal of the turnover order was pending. The only evidence of vexatiousness or harassment consists of Merchants’ original defeat, its failure to reinvest the CD’s, and its allegedly dilatory litigation tactics. None of the alleged pretrial abuses was the subject of a motion for sanctions in the lower courts and some of the “abuses,” such as trial continuances, were specifically approved by the court. There is no evidence that Merchants deliberately concealed the CD’s, or their expiration dates, from the trustee. In short, although Merchants chose to defend a position that it probably knew was in some respects weak,[2] there is no evidence that Merchants took unfair advantage of the legal system or the trustee. The jury finding to the contrary is clearly erroneous.[3]
Accordingly, we AFFIRM the judgment of the district court as to liability and damages. We REVERSE the award of attorneys’ fees to Sandoz, the trustee, and to Whitney National Bank of New Orleans, the permissive intervenor. The motion of the appellees for punitive damages and double costs pursuant to Fed.R.App.P. 38 is DENIED.

. The trustee’s complaint for damages was filed in March, 1983, in the bankruptcy court and was transferred, on Merchants’ motion, to the district court. The district court had jurisdiction of this action, despite the recent vicissitudes in bankruptcy law, pursuant to this court’s decision in In re Braniff Airways, Inc., 700 F.2d 214, 215 (5th Cir.), cert. denied, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). Had the action been commenced later in time, we note the possible applicability of 28 U.S.C. § 1334(c)(2), passed as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 101(a), 1984 U.S. Code Cong. & Ad.News (98 Stat.) 333.

. The appeals of the bankruptcy court’s findings on the turnover might have been known to be unlikely to succeed; pursuing a defense against the claimed damages for conversion and attorneys’ fees, however, was not unreasonable.

. Our holding precludes consideration whether Whitney would have been entitled to an award of attorneys’ fees in any event based upon its status as a permissive intervenor.